In the
United States Court of Appeals
For the Seventh Circuit

No. 97-3870

United States of America,

Plaintiff-Appellee,

v.

William J. Stoecker,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 95 CR 118--Robert W. Gettleman, Judge.


Argued February 9, 2000--Decided June 1, 2000


   Before Bauer, Easterbrook, and Ripple,
Circuit Judges.

   Bauer, Circuit Judge.  On March 4, 1997,
a jury found William Stoecker guilty on
numerous counts of bank fraud in
violation of 18 U.S.C. sec. 1344, making
false statements to financial
institutions in violation of 18 U.S.C.
sec. 1014, and giving or receiving bribes
in exchange for procuring loans in
violation of 18 U.S.C. sec. 215. Stoecker
was sentenced to 90 months imprisonment,
to be followed by three years of
supervised release, and $121,652,607.00
in restitution. He appeals his conviction
and sentence.

   Stoecker was the sole owner of the
Grabill Corporation. Grabill held stock
for four other holding companies (Camdon
Companies, Inc., the Techna Group, Ltd.,
Windsor-Hamilton, Ltd., and Foxxford
Group, Ltd.), which in turn owned
subsidiary or operating companies. As a
result of a major bank fraud scheme,
eight banks loaned Grabill $150 million.
Stoecker's scheme consisted of presenting
false financial statements and pledging
the same stock as collateral to more than
one bank. By December 1988, Grabill could

not meet its loan repayment obligations. When the bankruptcy trustee sold the companies assets and distributed the resulting proceeds, the banks were left with a loss of more than $82 million.

Stoecker first argues that the district court improperly limited his cross-examination of the government's witness, Richard Bock. Stoecker wanted to question Bock about an administrative complaint filed against him by the Illinois Department of Registration and Education (DRE). The DRE terminated its complaint against Bock after he voluntarily gave up his real estate license. Stoecker claims that this evidence went to Bock's credibility as a witness. The district court deferred its ruling until a voir dire of the witness was held.

During voir dire, Bock testified that he was the senior vice-president of finance for the real estate brokerage firm Quinlan & Tyson. While he was working there, the DRE conducted an audit of the firm and found a $300,000 shortfall in the escrow accounts. As a result, the DRE filed a complaint against Quinlan & Tyson, Bock, and William Jennings, owner of the firm. Jennings surrendered his license and three months later committed suicide. Bock maintained his innocence but voluntarily agreed to give up his real estate licence. The DRE then dropped its complaint against Bock. Based on this testimony, the district court found the testimony regarding the DRE complaint inadmissable.

Limitations on cross-examination are reviewed for abuse of discretion when there are no implications of the defendant's Confrontation Clause rights. United States v. Saunders, 166 F.3d 907, 920 (7th Cir. 1999).

In Saunders, the court did not permit cross-examination of the government witness on a report that he had been investigated for bias in favor of the government by the Department of Justice Office of Inspector General. Id. at 918. The court, in making its determination, stated that "specific instances of conduct may, in the discretion of the court, be introduced for the purpose of attacking a witness' credibility, the probative value of such evidence must still outweigh the danger of unfair

prejudice, confusion of the issues, or misleading the jury." See Fed.R.Evid. 608(b)./1 Because the Department of Justice did not take disciplinary action against the agent, the court denied the defense request.

In this case, the district court determined that the prejudicial value of the DRE complaint outweighed the probative value of the evidence for impeachment purposes. The evidence was unrelated and far too remote to be probative and it would have been unfairly prejudicial. In fact, the DRE complaint was over fifteen years old, no final assessment of guilt was ever made, nor was Bock ever required to pay restitution. Further, even if there had been a conviction, it would have been inadmissible. The court would not have allowed the prior conviction into evidence pursuant to section 609(b) of the Federal Rules of Evidence,/2 which provides that any conviction over ten years old is inadmissable unless its probative value substantially outweighs its prejudicial value. We find that the district court did not abuse its discretion in preventing Stoecker from cross-examining Bock about the complaint.

Stoecker next argues that the district court erred in admitting Bock's 1991 statements to FBI investigators as a prior consistent statement under federal rule 801(d)(1)(B). Bock testified about the fraudulent activities of Stoecker and the Grabill Corporation. As the chief financial officer for Grabill, Bock knew of and assisted Stoecker in making misrepresentations to banks for the purpose of obtaining loans from them. Because of a plea agreement, Stoecker urged on cross-examination that Bock had an incentive to testify falsely.

Following the cross-examination, the government moved to admit the plea agreement and prior consistent statements of Bock. The government argued that the 1991 statements were made several years before the plea agreement and before Bock had any motive to lie. The court ruled that in order to enter the prior consistent statements, the government had to redirect Bock. Before doing so, the court permitted defense counsel to conduct a voir dire examination of Bock. Following the voir dire, the judge denied

the admissibility of the plea agreement but did admit the prior consistent statements.

Evidentiary rulings of the trial judge are reviewed for an abuse of discretion. United States v. Fulford, 980 F.2d 1110, 1114 (7th Cir. 1992). A four-part test has been established to allow the admission of prior consistent statements under Federal Rules of Evidence 801(d)(1)(B) to rehabilitate a witness:

1) the declarant testifies at trial and is subject to cross- examination; 2) the prior statement is consistent with the declarant's trial testimony; 3) the statement is offered to rebut an express or implied charge of recent fabrication or improper motive; and, 4) the statement was made before the declarant had a motive to fabricate.

Id. at 1114; United States v. Lewis, 954 F.2d 1386, 1391 (7th Cir. 1992). Stoecker contends that the third and fourth criteria have not been satisfied.

The third prong permits admission of prior consistent statements if there has been an express or implied charge of recent fabrication. Between the questions on cross-examination and voir dire, the court correctly inferred that the questions were designed to imply that Bock fabricated his testimony. During voir dire, Stoecker asked Bock several times if he knew the implications of his trial testimony under the plea agreement. Specifically, that any reduction in his sentence was up to the government. The court correctly found that Stoecker's intent was to imply Bock was acting in his own self interest.

As for the final prong, the rule requires that the statement have been made before the declarant had a motive to fabricate. Here, the statements in question were made in 1991, approximately four years before the original indictment and five years before the plea agreement. Because these statements were made several years earlier, the court determined that Bock did not have a motive to fabricate. The court reasoned that to do so would imply that everyone who makes a statement to law enforcement officers has reason to fabricate. The court relied on United States v. West,

670 F.2d 675 (7th Cir. 1982), to admit the statements only through the redirect of Bock, not through the FBI agent to whom they were made. Because, as we said in Fulford, reasonable minds can differ as to when one first possessed a motive to fabricate, the court did not abuse its discretion in admitting the prior consistent statements. Fulford, at 1114.

Stoecker argues that Fulford is no longer instructive because of the Supreme Court's decision in United States v. Tome, 513 U.S. 150, 154. The court in Tome did not allow admission of the prior consistent statements because the statements were made after the witness had a motive to lie. Id. But the court specifically stated that a consistent statement that predates the motive is a square rebuttal to implication that the witness had a motive to lie. Id. at 158. That is exactly what happened here. The judge determined that the statements Bock made predated the plea agreement by approximately five years. The court found that the plea agreement could establish a motive and did not allow that to be admitted into evidence. Further, Stoecker had the opportunity to re-cross-examine Bock, unlike Tome, where witnesses other than the declarant were questioned. We believe that the court did not abuse its discretion in admitting the prior consistent statements of Bock.

Stoecker next contends that the district court erred in admitting five stock pledge charts into evidence. The charts detailed which stocks Grabill pledged as security for its loans and revealed that, in several instances, the same stock was pledged to more than one bank. The government suggested that the charts were a summary of the witness testimony regarding dates and pledges that the jury might forget during the course of a long trial. The court admitted the charts under section 1006 of the Federal Rules of Evidence which provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be

produced in court.

Fed. R. Evid. 1006.

In United States v. Swanquist, 161 F.3d 1064 (7th Cir. 1998), we upheld the admission of charts to the jury comparing the defendant's "disclosed" loans with his "actual outstanding loans." Id. at 1070. The jury was then instructed that the charts were to be used only as an aid in evaluating the other evidence. Id. at 1073. In United States v. Robbins, 197 F.3d 829, 837 (7th Cir. 1999), we stated "the basic purpose of the summary exhibit was to recapitulate the numerous and voluminous exhibits that had already been introduced into evidence and that were difficult to sort out." The same is true here and the court properly instructed the jury to analyze the underlying evidence on which the charts were based. Therefore the court did not abuse its discretion in admitting the pledge charts.

Finally, with respect to restitution, Stoecker argues that the court did not take into account his ability to pay restitution nor did it inquire into the determination of the bankruptcy court. Once more, we review the district court's calculation of restitution for an abuse of discretion. United States v. Newman, 144 F.3d 531, 542 (7th Cir. 1998).

In Newman we explained that the Mandatory Victims Restitution Act of 1996, 18 U.S.C. sec. 3663A, discarded the discretionary balancing system. Id. The court no longer has discretion as to whether or not to impose restitution on a defendant who has an inability to pay. Newman, at 537. The court went on to say that the defendant's ability to pay will only be addressed when setting up a payment schedule. Id. Because the MVRA applies to any conviction imposed on or after April 24, 1996 and Stoecker was convicted in 1997, his arguments must fail. The district court did not abuse its discretion in ordering Stoecker to pay restitution.

For the foregoing reasons the district court is affirmed.

/1 Rule 608(b) provides: Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of

attacking or supporting the witness' credibility, . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of a witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

/2 Rule 609(b) provides: Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.